Arthur Markewich, J.
The first affirmative defense must be sustained; ‘ ‘ more than four months have elapsed between the time the determination sought to be reviewed became final and binding upon the petitioners and the date this proceeding was instituted. ’ ’
The following are the significant dates:
January 5,1957: examination held;
January 14, 1957: commencement of a week of publication in the City Record of tentative key answers;
January 29, 1957: deadline of filing* of protests to key answers;
March 25, 1957: publication of final key answers;
June 7, 1957: notification of examinees not attaining passing grade;
July 31, 1957: promulgation of official list;
October 3, 1957: commencement of this proceeding.
*69 The date of finality is held to be, as respondents contend, March 26, which obviously was more than four months before October 3. The court is led inevitably to apply the limitation stated in section 1286 of the Civil Practice Act (Goldberg v. Municipal Civil Service Comm., 128 N. Y. S. 2d 51, and cases therein cited). Since petitioners are barred from maintaining this proceeding, nothing will be said as to the merits of petitioners’ contentions, set forth in lengthy detail, that the final key answers are either less acceptable or at least no more acceptable than those urged by petitioners.
Petitioners have endeavored to distinguish the circumstances found here from those presented in Goldberg and related cases. One argument presented merits little more than passing notice; it attempts to invoke rule V (§ V, subd. 5) of respondents’ rules (N. Y. City Civil Service Comm. Rules). That regulation allows examinees a period of two months from establishment of the eligible list to claim manifest error or mistake in rating examinations. Petitioners would interpret this to mean that the section 1286 period of four months does not begin to run until the V-V-5 period of two months has expired, which is to say that the total period of limitation did not expire until January 31, 1958, or six months after July 31, 1957. No petitioner, as far as appears from the papers, made any claim of a rating error of the clerical kind covered by the rule, nor does the petition here seek redress of any final act denying such a claim. The rule simply has no application to the kind of situation before the court.
Petitioners’ other barrel shoots more effectively. It is stated that petitioners, though permitted to keep the examination questions and to copy their answers, were not allowed sufficient time to do so, nor did the instructions bring home to them that failure to retain an accurate record might make it difficult or impossible effectively to protest tentative key answers. Some petitioners kept no copies; some made inaccurate notes. After publication of tentative answers took place, during the week of January 14, application was made by these and others to see their examination papers the better to be able to formulate protests for filing before January 29; all such requests were refused. Those who passed (they here petition for upgrading by having certain disallowed answers accepted and credited) were not permitted access to their answer papers until publication of the list. As was stated in the decision of the cross motion, such ‘ ‘ petitioners say that, automatically, those denied access to their papers until July 31 * * * were never given *70 any actual opportunity to protest the key answers before the running of the period of limitation * * * The claim of those who failed is substantially the same.” As to the latter, the date of access was June 7, when failure notices were given.
The meaning of the Goldberg rule is plain: the act of finality which sets the period of limitation running is the adoption and promulgation, by publication, of final key answers; such adoption is the official response to any protest theretofore filed to a tentative key answer. Therefore, if, as petitioners claim, any effective attempt to protest a tentative answer had been frustrated by insufficient instruction, or deprivation of opportunity to keep answers at the time of examination, or refusal to permit access to examination papers, or a combination of these factors, a limitation period would be tolled until the affording of opportunity to make an effective protest and until the making of a ruling thereon. This was the essence of petitioners’ claims as set forth in the petition and the supporting affidavits originally submitted. Nothing was submitted by respondents at that time except the bare notice of cross motion to dismiss because, on the face of the petition, it appeared that the section 1286 limitation period had run. In order that an apparent issue of fact might be joined and resolved, the cross motion was denied and an answer and affidavits called for.
The answer, filed without accompanying affidavits, was found to supply little more than a restatement of the cross notice in terms of the affirmative defense of limitation. At this juncture the court was in no better position to resolve a factual issue then before; petitioners’ papers, though full of factual data, told nothing of the actual instructions given the examinees except in terms of conclusory characterization; respondents’ papers said even less. The court cut the knot by requiring submission of an agreed specimen copy of the examination book. That exhibit having been submitted, the issues may now be resolved on the merits. The allegation in the reply’s first paragraph that the court, by decision of the cross motion, had adjudicated “ that the Statute of Limitations does not bar this proceeding ’ ’ is without foundation; in the prior decision the court considered only an attack upon the sufficiency of the petition, whereas here a defense is to be weighed on the merits. Turning to the examination instructions, it is found that, though nothing is said by way of explicit warning that one failing to keep a copy of the answers would not thereafter have access to the answers as made at the examination until either the giving of a failure notice or publication of the eligible list, the instruc *71 tions are so worded, when read in the context with the directions as to protest procedure, as to be reasonably calculated to tell all that was necessary. Respondents cannot be said to have been arbitrary or capricious in the discretionary exercise of their functions in the drafting of the instructions, nor may the court substitute its own draftsmanship.
It is axiomatic that the conditions surrounding an examination may be deemed part of the examination itself and, as long as such conditions are identical for all examinees, reaction to them is a part of the test. All candidates received the same instructions and it may well be said that the weighing of the importance of an opportunity to retain answers in these circumstances is properly part of a test to which candidates for police sergeant may be put.
Nor was it arbitrary to withhold access to the examination answer papers as was done. Though nothing is said in the papers before the court as to the reason for such withholding, at least one valid administrative reason may be inferred in these circumstances. Here are found several hundred examination papers, each containing 100 possible answers to questions, each answer indicated only by a pencil mark in one of four places. How easy for an examinee inspecting his papers to yield to temptation, now that the acceptable answer is known, and attempt an erasure or other change! The problem of supervision in these circumstances would be staggering and provides sufficient reason for refusal of access. Nor, actually, is the court persuaded that it was necessary, though it may have been more convenient, for an examinee to have his own answer paper in order to frame and present a protest directed to a key answer.
It has not been demonstrated that petitioners were frustrated by respondents from presenting protests at the proper time. There was no tolling of the period of limitation, and it had run when this proceeding was commenced.
Application denied; petition dismissed.